## War Fork Land Company v. Llewellyn.

(Decided June 5, 1923.)

### Appeal from Jackson Circuit Court.

1. Public Lands—"Vacant and Unappropriated Lands" are Not Limited to those Not Previously Entered.—Within Ky. Stats., section 4703, referring to vacant and unappropriated lands, and section 4704, providing that none but vacant lands shall be subject to appropriation under the chapter, the words "vacant and unappropriated" are not limited to lands not previously entered, surveyed, or patented, in compliance with the statutes, but include lands settled or held in good faith by others at the time of entry, even though the title has never passed from the state because of defect in the proceedings.

2. Public Lands—Purpose of Statute was to Secure Settlement and Improvement of Vacant Lands.—The purpose of the statutes authorizing the entry of lands was to secure the settling and improving of the vacant lands.

3. Public Lands—Lands Actually Held Under Color of Title to Marked Boundary are Not "Vacant."—Lands which, at the time of entry by plaintiff, were actually held by defendant under color of title by virtue of a deed conveying them to the defendant, to a boundary defined by marking on the trees, are not "vacant" lands which plaintiff was entitled to enter under Ky. Stats, section 4704, even though defendant's predecessor in title had never acquired title from the state.

RIVES & SHANNON, A. W. BAKER, L. C. LITTLE and H. J. JOHNSON for appellant.

BEGLEY & MOORE and W. E. BEGLEY for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

By a written contract dated January 19, 1915, appellant agreed to purchase a described tract of land from appellee if he would obtain a patent for and perfect his title to it. Appellee obtained a patent from the state and tendered appellant a deed of warranty, but appellant refused to accept the deed, and this suit was filed for a specific performance of the contract. Appellant resisted the action on the ground that the patent was void because of an outstanding survey of the land previously made, and also because the land was in the adverse possession of another at the time the patent was

procured.  Both of these defenses were denied by the
court below.

Appellee claims to have made an entry on the land in
dispute in the fall of 1914.  He testified that at that time
the land was wild and unoccupied, and that he first
learned that it was probably vacant from the description
in a deed for an adjoining tract, which called for a cor-
ner of the Carson and Hughes survey of 125 acres.  In
order to locate that corner he wrote, as he said, to the
auditor of public accounts for a copy of the Hughes and
Carson patent, and by reply was informed that a thor-
ough search in the land office at Frankfort failed to show
that any such patent had been issued.  Thereafter ap-
pellee went on the land and surveyed it.  He claims
it was then unoccupied.  After making his survey he
entered it on the surveyor's book of Jackson county,
and on December 30, 1914, had the county surveyor make
a survey, at which time he discovered some men, who
were employes of appellant, cutting timber on the land.
He immediately notified the purchasing agent of appel-
lant of his purpose to carry the entry and survey into
grant, with the result that the contract in question was
made.

In 1912 appellant purchased from R. L. Thomas and
others a large boundary of land made up of several tracts
including the one in dispute, and thereafter removed the
timber from portions of the tract, and regularly listed
all of it for taxation.  The lines around the large tract
were marked with blue paint, and the inside lines on the
separate tracts as purchased and sold by former owners
were marked with white paint, prior to the time they
were purchased by appellant.  The lines of this tract
were painted white except where painted blue as a part of
the outside line of the larger tract. They were also shown
by marks made with an axe on standing timber.  It is
admitted that the deed for the larger tract was of record
in the office of the county court clerk of Jackson county
when appellee claims to have made an entry on the land,
although he says that he was not then advised of the ex-
istence of the deed.  A previous survey of the tract, ex-
cluding perhaps ten acres, had been made in 1856 for
Carson and Hughes, but no land warrant was issued for
that survey and it was never carried into grant.  Ap-
pellant did not prove title to the land from the Common-
wealth, although, as we have observed, it holds a deed

to it from R. L. Thomas and others, and it appears that this tract had been previously conveyed as a separate tract and as a part of a larger one.

It is claimed by appellant that the survey made for Carson and Hughes in 1856 was such an entry or survey within the meaning of section 4704 of Kentucky Statutes as vitiates the patent issued to appellee, or, if that be not true, the patent was void because the land was not vacant and unappropriated within the meaning of that section and section 4703 of the statutes. Appellee contests both points, contending, on the authority of Bryant & Co. v. Wood & Co., 90 Ky. 530, and many other authorities cited, that the Carson and Hughes survey does not affect his title, since the inchoate right thereby created has never been carried into grant and is therefore lost. We are inclined to concur in the latter contention, although we deem it unnecessary to decide the question in view of the conclusion that we have reached as to the second contention of appellant, viz.: That the land was not vacant and unappropriated within the meaning of section 4702, et seq., Kentucky Statutes.

The law provides that ''any person who wishes to appropriate any vacant and unappropriated lands may on application to the county court . . . obtain an order of court authorizing him to enter and survey,'' etc. This appellee did, the survey being made on December 30, 1914. At that time employes of appellant were cutting timber on the land. The boundaries were marked on standing timber by axe, the outside lines, conforming to the lines of the larger tract purchased by appellant, were marked by blue paint, and the inside lines by white paint. It is clear, therefore, that appellant was in possession of the land at that time, claiming to a well defined boundary. Consequently the question is, was the land vacant and unappropriated within the meaning of the statutes?

Section 4703 of Kentucky Statutes refers to ''vacant and unappropriated lands'' and section 4704 says: ''None but vacant land shall be subject to appropriation under this chapter. Every entry, survey, or patent made or issued under this chapter shall be void, so far as it embraces lands previously entered, surveyed or patented.'' It may be contended that the words ''vacant'' and ''unappropriated'' include all lands not previously entered, surveyed or patented in compliance with the statutes.

We are not, however, inclined to give the words such a narrow construction, in view of the aims and purposes of the law. In discussing this subject in Roberts v. Davidson, 83 Ky. 284, the court said: "It may be said that the statute, *supra,* relates only to cases where the title has in fact passed out of the Commonwealth, and not to a void patent; but in our opinion the state, having by its officers issued the patent, and although by some defect it may be void, yet the statute precludes others from entering upon or appropriating the land without further legislation. Such entries are prohibited for the protection of those who may have obtained the patent in good faith, or who have derived title to their homes through it and an honest purchase; and while the title under these circumstances remains in the state, the land can be appropriated only by the aid of further legislation." Here the court recognized the fact that, although land is held under a void patent and the title is still in the state, it is not vacant or unappropriated land within the meaning of the statute.

In Goosling v. Smith, 90 Ky. 157, in which the rights of claimants under conflicting patents were determined, it was said: "While, therefore, a party who makes the first entry of land then subject to entry may, if necessary, enforce by judicial proceedings his right to have survey first made, nevertheless, if there has been already either an entry or survey made of the same land by another, his entry, survey and patent are, in the meaning of the statute, to be treated as void." And in American Assn., Limited v. Innis, 109 Ky. 609, after referring to the provision that "none but vacant land shall be subject to appropriation under this chapter," the court said: "There was some apparent conflict in the opinions of this court construing this section of the statute. And in the case of Gibson v. Board (Ky.) (43 S. W. 684), all of the opinions of the court theretofore delivered were considered, and the conclusion reached that the doctrine announced in McMillan's Heirs v. Hutchenson, 4 Bush 613; Kirk v. Williamson, 82 Ky. 161; Goosling v. Smith, 90 Ky. 157 (13 S. W. 437); and Davidson v. Coombs, 5 Ky. Law Rep. 812, that every entry, survey or patent upon land which had been previously entered, surveyed or patented was absolutely void, and conferred no title whatever, was adhered to."

The two last mentioned cases and the authorities therein cited are referred to, not as decisive of the point

at issue, but as indicating the purposes of the statutes which we conceive and which indeed have been uniformly understood to be the settling and improving of vacant lands. Where one makes an entry or survey, those purposes are deemed to have been manifested, and it has been held without exception that such acts withdraw the land so entered or surveyed from the operation of the statutes; in other words, it automatically ceases to be vacant or unappropriated land. Bryant & Co. v. Wood & Co., *supra,* is not in conflict with this view, for that decision, as explained in Bevins v. Collingsworth, 141 Ky. 423, was rested on the doctrine of laches available in equity to deny a recovery in favor of one who had manifested a purpose to settle and improve vacant land, but who had failed thereafter to take any steps to carry it out and had thereby induced his adversary to believe it had been abandoned.

In the Bevins case there is an elaborate discussion of all the previous cases touching the rights of conflicting entrants and patentees, as well as the subject of vacant and unappropriated land. In that opinion it was said: "It may be conceded that lands once entered, or even surveyed or patented, may be recovered by the Commonwealth, as for fraud practiced in their procuration, or for some irregularity in proceeding that would vitiate it. Instances too numerous are shown where the state might but has not taken advantage of some wrong done it to repossess the title and land. If the state has not chosen to do so, it may be because it was deemed that actual settlement and improvement were the main considerations, and that where these have resulted it did not matter so much by what looseness of proceedings it was accomplished; that it were better to leave undisturbed those who through ignorance or in good faith had invested in the title, than to exact a more scrupulous regard for mere proceedings. But, however that may be, the policy of the state seems to have been not to proceed against such entrants; and the courts have steadfastly refused to let others call in question collaterally such irregularities."

Mason, Jr. v. Fuson, 171 Ky. 111, and Bryant & Co. v. Wood & Co., *supra,* deal with conflicting surveys, entries and patents, and have no application to the subject under consideration beyond the point of illustrating the aims of the law, which, as we have seen, are to en-

courage the settling and improving of vacant lands. This court has so consistently kept these aims in view that it has frequently held that, where by survey or entry one manifests a purpose to settle and occupy land, a subsequent survey and entry of the same land is void; and similarly that land occupied under a void patent, the title to which is in the state, is not subject to appropriation under the existing laws. The statutes do not subject any lands to appropriation the title to which is in the state nor any lands not previously entered, surveyed or patented, but only vacant lands. The word "vacant" as ordinarily understood means unoccupied. Here appellant was in possession of the land under color of title at the time appellee's entry was made. Its deed was of record, and the very purpose that the legislature had in view in respect to vacant lands had been previously accomplished by appellant as to this tract. If land for which a void patent has been issued by the state cannot thereafter be patented as vacant land, and if the intention to settle and improve land, as evidenced by an entry and survey, excludes it from the statutory definition of vacant and unappropriated lands, certainly land occupied by one who claims to a well defined boundary under color of title cannot be regarded as vacant and unappropriated within the meaning of the statute. It follows that the patent issued to appellee is void.

The judgment is therefore reversed and the cause remanded with directions to the lower court to dismiss the petition.