American Association (Limited) v. Short.

CASE 76—PETITION EQUITY—MAY 16.

# American Association (Limited) v. Short.

APPEAL FROM BELL CIRCUIT COURT.

1. VENDOR AND VENDEE—FAILURE OF TITLE.—Under a deed of general warranty reciting in one part that the land is to be paid for at a certain price per acre "on settlement of the acreage of a good title," and in another part that it is to be paid for "as soon as acreage of clear title can be determined so as to ascertain amount yet due," the vendee is not bound, as is the general rule in case of an executed contract of sale and purchase of land, to rely upon warranty of title and await eviction before resisting recovery of purchase money, but he has the right in this action to recover the purchase money, to make the issue and defeat the recovery in case the vendor does not show a good or clear title to the land sold, or to the extent he so fails.

2. PATENT TO LANDS IN TENNESSEE.—While by compact between the States of Kentucky and Tennessee fixing the boundary line between them the State of Kentucky was to have title to and right to dispose of all the vacant land within a certain territory in the State of Tennessee, and the Legislature of Kentucky gave to some of the counties lying on the southern border vacant land situated within the territory mentioned, and authorized patents to issue on orders of county court of such counties, yet no such gift was ever made to the county of Bell, and the county court of that county, having no authority to make orders for location, survey or appropriation of the lands in controversy in this case which lie in the State of Tennessee, patents issued based upon orders of the county court of Bell county for such lands are void.

CHAPMAN & SAMPSON FOR APPELLANT.

1. The appellant can not be required to pay for any land except such as the appellee passes to it under good and clear title in Bell county, Kentucky, and not elsewhere. (5 L. R. A., 654: McGuire v. Kirk, 16 Ky. Law Rep., 87; Cates v. Loftus, 3 A. K. Mar., 202; Hart v. Bodley, Hardin, 106; Williams v. State, 64 Ind., 553; 95 Ind., 496; Davis v. Dycus, 7 Bush, 4; Bodley v. McChord, 4 J. J. Mar., 475.)

2. The appellee's patents and deeds do not confer title to any lands other than in Bell county, Kentucky, and the attempt to appropriate land in Tennessee upon a warrant from the Bell county court must fail, and the survey and patent of land beyond the limit of Bell county are inoperative and confer no right or title.

(Sutton v. Meuser, 6 B. M., 439; Bowman v. Eggner, 7 Bush, 69; Collins v. Clark, 8 Dana, 16; McMillan's heirs v. Hutcheson &c., 4 Bush, 615; Hart v .Rogers,. 9 B. M., 418; McGuire v. Kirk, 16 Ky. Law Rep., 87.)

3. The stipulation of the deed of conveyance being that the appellant was to pay at a certain rate per acre for all the land.to which appellee showed good title, appellant is not bound to rely upon its warranty of title but may resist recovery by appellee for any part of the land to which he failed to show title. (Acts 1835, page 307; Second Stat. Law Ky., 1028; Allen v. Sanders, 7 B. M., 593; Warvell on Vendors, vol. 2, pp. 927, 928; Runner v. Young, 14 Ky. Law Rep., 828; Wilson, &c. v. Suggett's executor, 10 Ky. Law Rep., 731.; Mercantile Trust Co. v. South Park Residence Co., 94 Ky., 271; Howland Coal & Iron Co. v. Brown, 13 Bush, 687; Fitzhugh v. Croghan, 2 J. J. Mar., 429; Townsend v. Goodfellow, 3 L. R. A., 739; 5 L. R. A., 654.)


WILLIAM LOW FOR APPELLEE.


1. The appellant being in possession of all the land embraced in the deed and having never been disturbed or evicted, and there being no allegation or proof that the appellee practiced any fraud or that he is a non-resident or insolvent, the appellant can not resist the payment of the purchase price by showing defective title; nor does the fact that the deed contained a covenant of seizin have other effect. (Rawle on Covenants for Title, 293 & note; Hall's admr. v. Priest, 6 Dana, 13; 82 Ky., 282; 4 B. M., 415; 3 J. J. Mar., 582; 4 Mon., 73; 81 Ky., 608; 7 Mon., 202; Rawle on Covenants for Title, 263 note 1, 455.)

2. The stipulation of the deed that the remainder of the purchase price was to be paid at a certain rate per acre "on settlement of the acreage of good title" held by appellee was intended merely to fix the compensation for the land in which he could show good title as against his vendor, and the covenant of warranty in the deed must be relied upon and looked to for indemnity for land, the title to which was found to be in third parties.

3. A grantee in a deed containing a covenant of seizin is estopped from setting up the title in himself as constituting a breach of covenant. (Fitch v. Baldwin, 17 Johns, 166; Bebee v. Swartwourt, 3 Gilman, (Ill.), 179; Furnace v. Williams, 11 Ill., 229; Horrigan v. Rice, 39 Minn., 49; 2 Herman on Estoppel, 821; 1 Warvell on Vendors, 425.)

4. The appellant having, after the conveyance from appellee to its trustee, purchased and received conveyances of portions of the

American Association (Limited) v. Short.

land already conveyed to its said trustee, it can recover only nominal damages from appellee in the absence of any testimony as to what was paid therefor or what was a reasonable price. (2 Warvell on Vendors, 988; Harlow v. Thomas, 15 Pick. (Mass.), 69; Pate v. Mitchell. 23 Ark., 590; Mercantile Trust Co. v. South Park Residence Co., 94 Ky., 271; Vanmeter v. Griffith, 4 Dana, 89; Morgan's heirs v. Boon's heirs, 4 Mon., 297; 2 Warvell on Vendors, 924; Sampson v. Hawkins, 1 Dana, 303.)

W. H. YOST FOR APPELLEE IN PETITION FOR REHEARING.

1. The provision in the deed that the price to be recovered was to be determined by the "acreage of good title" held by the grantor does not change the accepted rule that whenever a grantee purchases outstanding claims he takes them in trust for the grantor, and if by such purchase his title to the land is perfected, the grantor may still recover the purchase price agreed to be paid, less the amount actually expended to secure such outstanding claims.

2. The opinion of the court permits the appellant to work a great injustice upon the appellee, since the former is allowed to retain possession of the land as against the latter without having paid him therefor, and in the face of the fact that the appellant failed to allege or to prove what sum had been paid to third parties for these outstanding claims, if anything.

3. The appellee having been in the unquestioned and undisturbed possession of the land at the time of the sale to appellant, he is at least entitled to have the contract rescinded and the possession again restored to him.

4. In holding that the grant from Bell county was void on the ground that that county had never been authorized to make such grants by the Legislature, the court overlooked the fact that the portion of Bell county in controversy was formed and taken from Whitley county, which was so authorized by the said body.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1889, C. W. Short sold and conveyed by deed containing clause of general warranty to A. A. Arthur twelve distinct tracts of land.

· In December, 1890, Short brought this action for judgment against Arthur for purchase money and enforcement of vendor's lien.

In his answer Arthur stated the consideration failed because Short had no good title to the land; but that he, Arthur, had, when the deed was made, a title by purchase from others to a large part of it, and had since acquired title to other parts or tracts.   He further stated he made the contract merely as trustee of American Association (Limited), which then had the beneficial interest, and, subsequently, that corporation became party defendant, and filed answer making the same defense Arthur had done.

Upon final hearing it was adjudged Short had good title to about 1762 acres of the twelve tracts conveyed by him to Arthur, and that he recover $26,440, less what had been paid.

. But the parties made an agreement, entered of record, in substance that defendant would abide by and not appeal from so much of the judgment as required payment at the contract price for 1128 acres, situated in the State of Kentucky, but would prosecute this appeal from that judgment to the extent it required payment at the contract price for 634 acres, situated in the State of Tennessee, plaintiffs agreeing no execution thereon should in meantime be issued.

It appears that in 1870, in consideration of twelve distinct orders from the Bell County Court, there was granted by the Commonwealth of Kentucky to J. H. Reno twelve distinct tracts, each described in the patent therefor, and also in each accompanying survey, as lying and being in the county of Bell, including the 634 acres ascertained and now agreed to be in the State of Tennessee.

In 1884, J. H. Reno, by deed, conveyed those tracts, referring to patents and surveys for description, to L. H. Reno, who, in 1888, conveyed same tracts, and in same manner described, to C. W. Short.   And the main question in this

case is as to proper construction and meaning of the deed from Short and wife to Arthur for the same lands.

That portion of the deed necessary to be copied is as follows: "That the said parties of the first part for and in consideration of the sum of twenty-five hundred dollars to me in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, and remainder to be paid for at the rate of fifteen dollars per acre *on settlement of the acreage of a good title, held by C. W. Short, under deed to him from L. R. Reno and wife of date August 6, 1888, recorded* in Book 7, at p. 198, of records of Bell county, Kentucky, in six and twelve months equal payments *as soon as acreage of clear title can be determined so as to ascertain amount yet due,* said six and twelve months to be computed from this date, have granted, sold and conveyed to said party of the second part the following described premises, to-wit, *situated in Bell county, Kentucky,* to-wit, the land conveyed in said deed from Reno to Short being the land patented and granted by the State of Kentucky to J. H. Reno, as follows:" Then follows reference to each patent and description and quantity of land in each tract.

It seems to us plain, from language of that deed, the parties intended the vendor should have right to demand and vendee be required to pay, at the agreed price of fifteen dollars per acre, for no more of the twelve tracts of land sold and conveyed than it was to be subsequently and on settlement shown or determined Short had a good title to. For if they had meant payment of, or obligation to pay, balance of purchase money should await or depend merely upon ascertainment by survey of the exact number of acres in the twelve tracts which by the survey were already ascertained and set out in the patents, there would have been no necessity for the words "acreage of a good title,"

used in one part of the deed, nor of the additional words "acreage of clear title." In fact, in language emphasized and not to be misunderstood, deferred payments were to be made as soon, but not before, "acreage of clear title" could be determined. Such being the true intent and meaning of the parties, the vendee was not bound, as is the general rule in case of an executed contract of sale and purchase of land, to rely upon warranty of title and await eviction before resisting recovery of purchase money. But he had the right in this action to make the issue and defeat recovery in case the vendor does not show a good or clear title to the land sold, or to the extent he so fails. Nor does the fact the vendee had at date of the deed title inferior to that of the vendor, to any part of the land, or that he subsequently acquired it, inure to benefit of the vendor, or give him a right to recover the purchase price, as is the general rule in case of executed contracts, because it was the plain meaning of their contract that Short was to have right to and Arthur was to pay for only the number of acres it was to be ascertained or determined the former had a good or clear title to.

By compact between the States of Kentucky and Tennessee the boundary line was fixed on what is called Walker's line, north of latitude 36 degrees, 30 minutes, contended for by the former, but it was to have title to and right to dispose of all the vacant land between the two lines, while the latter State was to have territorial jurisdiction.

The legislature had by statute given to some of the counties lying on the southern border, vacant land situated within the territory mentioned and opposite to them, and authorized patents to issue on orders of county courts of such counties. But no such gift had ever been made to the county of Bell, and the county court of that county had, con-

sequently, no authority to make orders for location, survey or appropriation of the land in controversy on this appeal, which lie in the State of Tennessee. And, according to opinions rendered by this court in analogous cases, the patents issued to Reno, based upon orders of the county court of Bell county for such lands, are void, and neither Short nor his vendors ever acquired a clear or good title thereto. (Hart v. Rogers, 9 B. M., 419; McGuire v. Kirk, 16 Ky. L. R., 87.)

Moreover, the lands granted to J. H. Reno, under whom Short claims, purport to be, and are all described in the patents and orders of court under which they were located and surveyed as, situated in the county of Bell, State of Kentucky; not in the State of Tennessee at all.

As, therefore, the consideration failed to the extent it was agreed to be paid for lands situated in the State of Tennessee, plaintiff Short was not entitled to judgment therefor against either defendants Arthur or American Association, and it was error to render it.

The judgment is reversed and cause remanded for proceedings consistent with this opinion.